**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Criminal Case No. 3:10cr00028-1 |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| **TOMAS JAIMES-CAMPOS.** | ) | By: Norman K. Moon |
| | ) | United States District Judge |

Petitioner, Tomas Jaimes-Campos, a federal inmate proceeding *pro se*, filed this motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255, challenging the validity of his guilty plea and his 162-month sentence for conspiring to distribute methamphetamine. Jaimes-Campos alleges that counsel provided ineffective assistance by failing to object to the government's breach of the plea agreement, and failing to explain the full consequences of the plea through an interpreter. The United States has filed a motion to dismiss. I find that Jaimes-Campos knowingly and voluntarily waived his right to collaterally attack his plea and sentence, and both his claims fall within the scope of that waiver. Accordingly, I will grant the government's motion to dismiss.

**I.**

On September 8, 2010, Jaimes-Campos was the sole defendant named in a one-count indictment handed down by a federal grand jury sitting in Charlottesville, Virginia. Count One alleged that Jaimes-Campos conspired to distribute and posses with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846.

On September 9, 2010, Jaimes-Campos appeared before Magistrate Judge B. Waugh Crigler for arraignment. With a sworn interpreter present, he was advised of court procedures

and the pending charges, appointed counsel, and remanded back to the custody of the United States Marshals' Service. Trial was set for November 16, 2010, in Charlottesville, Virginia.

On October 26, 2010, a plea agreement was filed with the court pursuant to Rule 11 of the Federal Rules of Criminal Procedure, and was signed by Jaimes-Campos, his counsel and the Assistant United States Attorney. Pursuant to the agreement, Jaimes-Campos pleaded guilty to Count One of the indictment, conspiring to distribute and possessing with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). Under the terms of the plea agreement, the United States agreed, *inter alia*, to recommend that the court grant Jaimes-Campos a reduction in his total offense level if he complied with his obligations under the plea agreement and accepted responsibility for his conduct. However, the plea agreement specifically provided that if he failed to accept responsibility for his conduct, he should not receive credit for acceptance of responsibility. Under the terms of the plea agreement, Jaimes-Campos waived, *inter alia,* his rights to appeal whatever sentence was imposed "on any ground" and to collaterally attack the judgment and any part of the sentence imposed upon him by the court. The plea agreement also advised Jaimes-Campos that the minimum penalty for the offense to which he was pleading was ten years of incarceration and the maximum penalty was a fine of $4,000,000 and/or life imprisonment, followed by a period of supervised release.

Jaimes-Campos initialed every page of the plea agreement, including the page containing the waivers of his rights to appeal and collaterally attack the judgment and his sentence. By signing the plea agreement, Jaimes-Campos affirmed that he had read the plea agreement, that he was "fully satisfied with [his] attorney and [his] attorney's advice, that he had carefully reviewed

every part of the agreement with his attorney, that he understood the agreement, and that he voluntarily agreed to its terms."

On November 12, 2010, I conducted Jaimes-Campos's plea hearing. During the hearing both an interpreter and Jaimes-Campos were sworn. Jaime Campos stated that he read and understood Spanish and understood a little English, was not under the care of a physician or psychiatrist, was not under the influence of any drug, medication, or alcoholic beverage, and felt "very well" that day. I found that Jaimes-Campos was competent to plead.

I also established that Jaimes-Campos was aware of the nature of the charges against him, understood the range of punishment that he faced, including the issues of deportation and how the United States Sentencing Guidelines might apply in his case, and that he knew he had the right to a jury trial. I further established that Jaimes-Campos was aware that he would be bound by his plea agreement, even if his sentence was more severe than expected.

I instructed the Assistant United States Attorney to review the salient portions of the plea agreement that Jaimes-Campos had reached with the United States. I asked Jaimes-Campos if the agreement described in court was different than what he understood the agreement to be, to which Jaimes-Campos responded, "[n]o. That's what it was." Jaimes-Campos affirmed that he had read the plea agreement with an interpreter, that he understood it before he signed it and that no one had made any promises or induced him to plead guilty.

After my questioning, Jaimes-Campos pleaded guilty to the conspiracy charge. I ultimately accepted Jaimes-Campos's plea and found that it was a "knowing and voluntarily plea supported by an independent basis in fact containing each of the essential elements of the offense." Jaimes-Campos signed a guilty plea acknowledgment form in open court stating that counsel had fully explained the charges contained in the indictment before Jaimes-Campos was

3

called upon to plead, that he had been advised of maximum punishment, and that his plea was knowing and voluntary, without threat or promise other than those disclosed in open court.

In the presentence report ("PSR") prepared for Jaimes-Campos, his probation officer calculated Jaimes-Campos's total offense level as 34, with a criminal history category of III. The PSR did not recommend an adjustment for acceptance of responsibility on the basis that, when interviewed by the probation officer, Jaimes-Campos denied dealing drugs or aiding any of his co-conspirators with drug transactions.

On January 27, 2011, I conducted Jaimes-Campos's sentencing hearing. Jaimes-Campos was present with counsel and an interpreter. (Docket No. 27) Jaimes-Campos's attorney disputed the offense level, requesting that I grant a two-point reduction for acceptance of responsibility. Counsel argued that Jaimes-Campos sought out a plea agreement, pleaded guilty, and saved the government resources by not going to trial. Jaimes-Campos's attorney attempted to justify his client's denial of responsibility by citing James-Campos's "grave concerns about his own safety and the safety of others" and his concern that an "outright admission of a role in the conspiracy would put his family members in jeopardy and put himself in jeopardy." The government responded by stating that one criteria for receiving a reduction for acceptance of responsibility is that the defendant clearly demonstrate acceptance of responsibility for his offense. Further, the government stated that Jaimes-Campos "merely had to state that he was involved in dealing drugs. He didn't have to give up anyone" or "talk about any other person and he didn't have to go beyond the offense of conviction." (Docket No. 40, p. 7). The government also offered to hear Jaimes-Campos accept responsibility in chambers, where the admissions would not be on record. However, counsel for Jaimes-Campos declined, stating, "I've discussed this with my client and on instructions, we have no evidence to present this

morning." (Docket No. 40, p. 7) Thereafter, I found that Jaimes-Campos was not entitled to a reduction for acceptance of responsibility, but was entitled to some variance for pleading guilty and saving the government from the time and expense of going to trial. I determined that Jaimes-Campos's total offense level was 34, with a criminal record category III, and his guideline range was 188 to 235 months. I further noted that if Jaimes-Campos had received a three-point reduction for acceptance of responsibility, the guideline range would have been 135-168 months. I imposed a sentence of 162 months.

On February 9, 2011, Jaimes-Campos, by counsel, appealed the final judgment. Jaimes-Campos claimed that the court erred in finding that he failed to accept responsibility for his offense. On August 10, 2011, the United States Court of Appeals for the Fourth Circuit dismissed the appeal in an unpublished *per curiam* opinion. The Fourth Circuit noted that Jaimes-Campos did not claim the waiver of appellate rights contained in the plea agreement was invalid. Further, the court stated that the record of the plea hearing established that the waiver of appellate rights was enforceable because the District Court complied with the requirements of Rule 11 to ensure that the guilty plea was knowing and voluntary, and that Jaimes-Campos waived his appeal rights knowingly and intelligently.

## II.

In his § 2255 motion, Jaimes-Campos claims that his counsel provided ineffective assistance by failing to: (1) object to the government's alleged breach of the plea agreement; and (2) explain the full consequences of the plea agreement. Jaimes-Campos contends that if he had understood the full consequences of pleading guilty, he would have cooperated with the probation officer during the presentence investigation interview, and presumably that he would have accepted responsibility for his actions. Because I find that Jaimes-Campos knowingly and

voluntarily waived his right to collaterally attack his plea and sentence, and these claims falls within the scope of that waiver, I will dismiss these claims.

It is settled law in the Fourth Circuit that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Waivers of collateral attack are analyzed under a two-part analysis in which both the validity and the scope of the waiver are considered. *See, e.g.*, *United States v. Attar*, 38 F.3d 727, 731–33 (4th Cir. 1994) (holding that a waiver will be enforced if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver). The validity of a waiver "depends on whether the defendant knowingly and intelligently agreed to waive the right." *Id.* at 731–32. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221–22; *see also United States v. Brown*, 232 F.3d 399, 405–06 (4th Cir. 2000) (holding that a defendant's statements during the plea colloquy and evidence that he discussed the terms of the waiver provision with counsel and fully understood them provide powerful evidence that the waiver is valid). If the court determines that a petitioner's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Lemaster*, 403 F.3d at 220 (internal quotations and citations omitted). Although the validity determination is often made based on the "adequacy of the plea colloquy—specifically, whether the district court questioned the defendant about the . . . waiver—the issue ultimately is 'evaluated by reference to the totality of the circumstances.'" *United States v. Blick*, 408 F.3d

162, 169 (4th Cir. 2005) (quoting *United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002)). Thus, the determination "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)).

That does not end the inquiry, however. The court must also consider the scope of the plea agreement waiver: that is, whether it prevents the court from considering the particular claims the defendant asserts in his § 2255 motion. The United States Court of Appeals for the Fourth Circuit has defined a narrow class of claims that fall outside the scope of an enforceable waiver of direct appeal and § 2255 rights. Issues that a defendant could not reasonably have foreseen when entering into a plea agreement, such as the denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the imposition of a sentence based on a constitutionally impermissible factor such as race, fall outside the scope of the waiver.[1] *Attar*, 38 F.3d at 732; *Lemaster*, 403 F.3d at 220 n.2; *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992); *Blick*, 408 F.3d at 169–71. Thus, in addition to evaluating the validity of Jaimes-Campos's guilty plea and waiver of collateral attack rights, I must determine whether his claims fall within the scope of that waiver.

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity,' because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *Lemaster*, 403 F.3d at 221 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); and citing *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003)). Because the declarations carry such a presumption,

---

[1] In the Supreme Court's recent decisions in *Missouri v. Frye*, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Court held that a defendant is entitled to the effective assistance of counsel as it relates to plea offers that lapse or are rejected. It is unclear whether such a claim would be within the scope of a valid collateral attack waiver. However, I need not make that determination in this case, because there is no evidence that the United States offered a plea to Jaimes-Campos that either lapsed or was rejected.

they present a formidable barrier in any subsequent collateral proceedings. *United States v. White*, 366 F.3d 291, 295–96 (4th Cir. 2004) (quoting *Blackledge*, 431 U.S. at 74).

Jaimes-Campos claims that communication with his counsel through an interpreter was always "vague and confusing" and he "was never quite clear as to what the Plea Agreement really entailed." He states that this lack of understanding "forced him to be . . . in denial during his interview with the probation officer." However, during his plea hearing, for which an interpreter was present, Jaimes-Campos affirmed that he completely understood the terms of the plea agreement including the appeal and collateral attack waivers, that he was entering the plea and waiving his appeal rights knowingly and voluntarily, that he was completely and fully satisfied with his attorney's representation, and that he did not challenge the government's evidence against him. I took care to ensure that Jaimes-Campos entered his plea both knowingly and voluntarily by reviewing the provisions until I was fully satisfied that Jaimes-Campos understood. I made findings on the record at the plea hearing that Jaimes-Campos was competent to plead and that he voluntarily and knowingly entered his plea. These findings were not mere formalities but rather reflected my considered opinion that Jaimes-Campos was in fact fully competent and that his plea was knowing and voluntary. Nothing that has followed has dispelled that conclusion. Accordingly, I find that Jaimes-Campos's waiver of his right to collaterally attack the judgment is valid.

I must now determine whether Jaimes-Campos's claims are included within the scope of the waiver. Jaimes-Campos's claims concerning counsel's alleged failure to object to the government's breach of the plea agreement and failure to explain fully the consequences of the plea agreement do not allege a complete denial of counsel at any stage of the proceedings following the entry of the plea, the imposition of a sentence above the statutory maximum, or the

8

imposition of a sentence based on a constitutionally impermissible factor. *Lemaster*, 403 F.3d at 220 n.2 (citing *United States v. Attar*, 38 F.3d 727, 732 (4th Cir. 1994)). "A claim that counsel was generally ineffective does not suggest that the defendant was wholly deprived of counsel and, thus, such claims do not fall outside the scope of the collateral attack waiver." *Waller v. United States*, Case No. 7:07cv337, 2008 U.S. Dist. LEXIS 4173 (W.D. Va. Jan. 18, 2008) (citing *Lemaster*, 403 F.3d at 219–20). Because Jaimes-Campos does not allege that he was wholly deprived of counsel, his ineffective assistance of counsel claims fall within the scope of the general waiver of his collateral-attack rights. *See, e.g.*, *United States v. Rahman*, No. 2:03CR10084-001, 2011 U.S. Dist. LEXIS 144212, 2011 WL 6257306, at *4–5 (W.D. Va. Dec. 15, 2011); *United States v. Johnston*, Criminal Action No. 3:08-cr-00042-1, 2011 U.S. Dist. LEXIS 56295, 2011 WL 2118838, at *4 (W.D. Va. May 25, 2011). Therefore, I find that Jaimes-Campos has waived his claims, and they are therefore not cognizable in a § 2255 motion.

Moreover, even if these claims were not waived in the plea agreement, they nevertheless fail on their merits. To establish a claim of ineffective assistance of counsel, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. *Strickland v. Washington*, 466 U.S. 668, 669 (1984); *see also Williams v. Taylor*, 529 U.S. 362 (2000). Courts apply a strong presumption that counsel's performance was within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Hutchins v. Garrison*, 724 F.2d 1425, 1430–31 (4th Cir. 1983); *Marzullo v. Maryland*, 561 F.2d 540 (4th Cir. 1977). In addition to proving deficient performance, a petitioner asserting ineffective assistance must prove that he suffered prejudice as a result of his counsel's deficient performance. Specifically, a petitioner must show there is a

reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.  The petitioner "bears the burden of proving *Strickland* prejudice." *Fields*, 956 F.2d at 1297 (citing *Hutchins*, 724 F.2d at 1430–31). If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." *Fields*, 956 F.2d at 1290 (citing *Strickland*, 466 U.S. at 697).  A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.  *Strickland*, 466 U.S. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields*, 956 F.2d at 1297–99; *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In this case, Jaimes-Campos has not demonstrated ineffective assistance of counsel.

The plea agreement provided that the government would recommend a reduction for acceptance of responsibility *if* Jaimes-Campos accepted responsibility, and the record shows that he did not.  The government even offered Jaimes-Campos the opportunity to accept responsibility off the record during the sentencing hearing, making clear that he did not have to implicate anyone else to earn the credit.  These statements were made with an interpreter present. Inasmuch as Jaimes-Campos, despite at least two opportunities to do so, did not accept responsibility, he did not qualify for a reduction, and thus there was no breach of the plea agreement.  Further, Jaimes-Campos claims that he would have cooperated with the probation officer during the presentence investigation interview, and presumably would have accepted responsibility for his actions, if his counsel had properly communicated the full consequences of

pleading guilty. Jaimes-Campos asserts that a two-point reduction for acceptance of responsibility would have meant he would be sentenced to an offense level of 32 (121-151 months), instead of an offense level of 34 (151-188 months). This is a misstatement of the applicable guidelines. As I noted during the sentencing hearing, the guideline range for Jaimes-Campos was 188-235 months, for offense level 34, criminal history category III. Jaimes-Campos's sentence of 162 months was actually within the guideline range that would have applied if he had earned a two or three point adjustment for acceptance of responsibility. Thus, Jaimes-Campos has not met his burden to prove prejudice in this case.

I find that Jaimes-Campos has not demonstrated that counsel's performance was constitutionally deficient. Accordingly, I will dismiss these claims.

### III.

For the reasons stated herein, I will grant the government's motion to dismiss.

**ENTER:** This  21st  day of May, 2013.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE